UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DEBRA N. ADAMS                                                                                      PLAINTIFF

v.                                                                              CIVIL ACTION NO. 3:05-CV-128-S

EXPRESSJET AIRLINES, INC.                                                                           DEFENDANT

### MEMORANDUM OPINION

This matter comes before the Court upon the motion of the defendant, ExpressJet Airlines, Inc. ("ExpressJet"), for summary judgment. A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

For the reasons stated herein we will grant ExpressJet summary judgment.

## BACKGROUND

Plaintiff, Dedra N. Adams ("Adams"), is an African-American woman who has been employed by ExpressJet since February 26, 2000. On August 10, 2003, Adams sustained an on-the-job injury to her right knee. Her physician restricted her work to that which could be done while sitting or on crutches. However, her position as an Counter Sales Agent/Airport Sales Agent ("ASA") requires long periods of standing, significant walking, frequent lifting of luggage and other items weighing up to one hundred pounds (100 lbs.) each, reaching, squatting, twisting, bending, and kneeling.[1] Because these requirements were inconsistent with her medical restrictions, ExpressJet placed her on medical leave.

On October 8, 2003, Adams had surgery on her injured knee and was again restricted by her physician until December 16, 2003, to work that could be completed while sitting or on crutches. Although Adams requested to be assigned "light duty," ExpressJet claims that it was unable to accommodate her restrictions, unless it created a "make work" position, which it was not obliged to do. On December 16, 2003, Adams' restrictions were significantly reduced, and she was given a transitional/light duty assignment until December 22, 2003, when she returned to work without any restrictions.

When Adams returned to work after more than ninety (90) days on medical leave she discovered that the full-time position she had held at the time of her injury had been filled by another employee. ExpressJet has a policy under which positions that have been vacant for 90 days become open for fulfillment by other employees. Because no other full-time positions were open, Express Jet placed Adams into a part-time ASA position. Her duties and pay were exactly the same, and

---

[1] ASAs can be assigned to any of six different work areas at ExpressJet's Louisville Station: ticket counter, gate, ramp, operations, baggage service office, and bag room. Every three (3) months ASAs bid for shifts. Each shift indicates the days and hours of the week the ASA who successfully bids for that shift will work during the coming 3 month period. Although not required under ExpressJet's policy, manager Ted Ward associates each shift with one or more work areas for the ASAs' convenience. Nonetheless, ASAs must be able to work all areas at all times since their assignments are occasionally changed to meet business needs on a particular day or a portion of the day.

ExpressJet contends that Adams could still work forty (40) or more hours per week by picking up available shifts. On October 1, 2005, Adams bid into another full-time position.

Adams has now filed suit alleging that ExpressJet discriminated against her on the basis of her race by refusing to assign her "light duty" while she was medically restricted. Adams also claims that ExpressJet retaliated against her for making an internal complaint and later filing a complaint with the EEOC. Both claims are brought pursuant to Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act.[2]

## ANALYSIS

In order to prove her case of employment discrimination, a plaintiff must present either direct evidence of discrimination or circumstantial evidence to create an inference of discrimination. *See DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). But, rarely will a plaintiff be able to provide direct evidence of discrimination, since only the most blatant discriminatory remarks constitute direct discrimination. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) (stating that direct evidence "would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.'"); *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997) (explaining that "[r]arely can discriminatory intent be ascertained through direct evidence because rarely is such evidence available.").

Thus, it most often falls on the plaintiff to prove her case through circumstantial evidence utilizing the burden-shifting approach set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed 2d 668 (1973). This approach employs a four-factor test, first articulated in *McDonnell Douglas* and subsequently modified by the Sixth Circuit to fit the specific discrimination alleged. *See White v. Columbus Metropolitan Housing Authority*, 429 F.3d

---

[2] Kentucky courts, as well as federal courts applying Kentucky law, turn to federal case law interpreting Title VII when addressing claims under the Kentucky Civil Rights Act, since the general purpose of that Act is to provide a vehicle under which federal anti-discrimination laws, such as Title VII, can be executed. *See* Ky. Rev. Stat. § 344.020(1)(a).

232, 240 (6th Cir. 2005) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000)). Under this test, a plaintiff can establish her *prima facie* case of race discrimination by showing that:

1. She belongs to a protected class;
2. She was qualified for light duty work;
3. She suffered an adverse action; and
4. She was treated less favorably than similarly situated non-protected employees who requested light duty work.

*See id.*

If the plaintiff is able to establish a *prima facie* case, then the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for why the plaintiff suffered an adverse action. Once it does so, the burden of going forward then shifts back to the plaintiff to show that the defendant's reason was actually a pretext to discriminate. *McDonnell Douglas*, 93 S.Ct. at 1824.

Here, Adams fails to present any direct evidence of discrimination. Thus, we must examine whether she has set forth a *prima facie* case of discrimination. However, before we proceed, we address ExpressJet's argument that any claim Adams makes based on a April 2003 hand injury is time-barred.

A discrimination charge must be filed within 180 days (or within 300 days if filed with a state deferral agency) "after the alleged unlawful employment practice occurred." *Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). In her Complaint, Adams alleges discrimination only in relation to her August 10, 2003 knee injury. Yet, in her Response to ExpressJet's Motion for Summary Judgment, Adams also discusses a hand injury she sustained in April 2003, how she was not permitted to work with that injury, and the damages she allegedly suffered as a result thereof.

The allegations Adams makes with regard to that hand injury are beyond the scope of the pleadings and time-barred. Her EEOC complaint was not filed until March 4, 2004, and under either

the 180 day or 300 day standard, the April 2003 hand injury and her allegations of not being given "light duty" following that injury, fall outside the limitations period. Any claim Adams now makes with regard to that injury will be dismissed, and we will not consider allegations associated with that injury in determining whether she has set forth a *prima facie* case of discrimination. Also, because it is undisputed that Adams is a member of a protected class, we need only analyze the second, third, and fourth *McConnell Douglas* factors to decide whether she has made that *prima facie* case.

### I. Prima Facie Case of Discrimination

#### a. Qualified for the Position

ExpressJet argues that although Adams "had the training and skills necessary to perform her job[] . . . [she] was not physically qualified because she was not capable of performing all the essential functions of her job while restricted to sitting or working on crutches between August 10 and December 16, 2003." ExpressJet, however, misapplies the second *McConnell Douglas* factor. Only when the plaintiff was terminated or demoted does this factor ask whether the plaintiff was qualified for the position she held. In situations where the plaintiff was not hired, not promoted, or the like, this factor questions whether she was qualified for the position she *sought*. That is the case here.

Following her knee injury Adams essentially sought a modified ASA position. She asked for "light duty," *i.e.*, work she could perform while sitting or on crutches. ExpressJet admits that she "had all the training and skills necessary to perform her job." They also do not dispute that Adams could have performed certain functions of the ASA position while sitting down or on crutches. Thus, Adams was qualified for the "light duty" position she sought, and as such, she has established this factor in her *prima facie* case.

#### b. Adverse Action

Adams claims she was adversely effected from being placed on medical leave and not receiving "light duty". These adverse actions include but are not limited to:

      (1) Loss of pay;

      (2) Loss of her full-time position; and

      (3) Loss of accrual of vacation time

In response, ExpressJet argues that Adams' loss of her full-time position and placement into a part-time position was not an adverse action because by still receiving the same hourly rate and by being able to pick up extra shifts to work 40 hours a week, she did not suffer "a significant change in employment status." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998) (providing as examples of significant change: hiring, firing, failure to promote, reassignment with significantly different responsibilities, a less distinguished title, or other indices that might be unique to a particular situation).

ExpressJet's argument lacks merit. We are unable to fathom how the loss of a full-time position does not rise to the level of a significant change in employment status. It is irrelevant that she *could have* worked full-time hours; she was not *guaranteed* that time. Furthermore, ExpressJet neglects to address Adams' loss of pay and vacation accrual. We believe both these losses would be "objectively intolerable to a reasonable person." *Strouss v. Mich. Dept. Of Corrections*, 250 F.3d 336, 343 (6th Cir. 2001). Thus, we find that Adams has successfully set forth the third factor in her *prima facie* case.

### d. Less Favorable Treatment

In order for Adams to be "similarly situated" to a non-protected employee, she and the non-protected employee must be similar in all relevant aspects. *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005). There can be no "differentiating or mitigating circumstances that would distinguish" ExpressJet's treatment of non-protected employees. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). In other words, to prove this element Adams must present evidence that ExpressJet modified the duties of injured, non-protected ASAs to permit them to work "light duty."

In support of this element Adams submits the affidavits of the following non-protected employees, all of whom she claims were permitted to work "light duty" while injured: Jason Uhler ("Uhler"), Michael Kirk ("Kirk"), and Jim Goldener ("Goldener"). Adams also presents the affidavits of Ted Ward ("Ward"), her manager, and Aniccia Miller ("Miller"), an ExpressJet human resources manager during the time in question, e-mail correspondence between Ward and Miller, and her own affidavit in which she claims various employees were permitted to work with injuries or medical conditions. However, none of this evidence, even when viewed in a light most favorable to Adams, is sufficient to establish the fourth factor.

The affidavits of Uhler, Kirk, and Goldener demonstrate that they were permitted to work with injuries but none testified that they were medically restricted in any way or that their duties were modified by management in order to accommodate their injuries.[3] This is consistent with the testimonies of Ward and Miller. Both acknowledge that employees were permitted to return to work with injuries so long as those employees had no medical restrictions and were able to perform their job functions. Furthermore, although in her affidavit Adams names numerous ExpressJet employees who she claims worked while injured, she fails to sufficiently allege that these employees were medically restricted, unable to fully perform their duties, or that management accommodated these employees by assigning them "light duty."[4]

---

[3]After spraining his wrist, Uhler worked for over a week with his right hand wrapped in an Ace® bandage. However, he had full use of his right hand during this time. Following foot surgery, Kirk phased in his hours at work by "autoing out" early his first two weeks back on the job. He did this pursuant to ExpressJet's Authorized Unpaid Time Off policy (AUTO), which permits any employee, injured or not, to request unpaid time off work. Time off is awarded according to operational need and staffing. Although Kirk "autoed out," during the hours he worked he fully performed his job functions. Upon spraining his ankle, Goldener brought crutches with him to work at the suggestion of his physician. However, he testified that he did not need the crutches; they did not impair his ability to work; he was not medically restricted; and he did not receive any type of job modification due to his ankle injury.

[4]In her deposition Adams did allege that Beth Soper (Soper) was permitted to sit down and perform her duties at the E-Ticket machine towards the end of her pregnancy. However, Adams does not allege that Soper had to sit down or could not have otherwise performed her duties. Also, no allegations are made that an ASA is not permitted to sit while working the E-Ticket machine. Adams also argues that Ward allowed Sarah Lee (Lee) to come back to work and not work
(continued...)

Because Adams has not presented sufficient evidence to establish the fourth factor of the *McDonnell Douglas* inference creating test, she is unable to set forth a *prima facie* case of discrimination. However, even if she could set forth a *prima facie* case, ExpressJet has provided a legitimate, non-discriminatory reason for not having accommodated Adams with "light duty," and Adams is unable to rebut by supplying us with evidence of pretext.

### e. Legitimate, Non-Discriminatory Reason

ExpressJet's reason for not assigning Adams "light duty" during the time she was medically restricted is simply that no "light duty" work was available. Under ExpressJet's Transitional Duty program employees who are recovering from work related injuries may be temporarily assigned less rigorous duties. ExpressJet will provide these types of assignments when possible and when consistent with their business needs, but they are not regular positions and are not guaranteed. Adams was denied transitional duty because her restrictions were incompatible with ExpressJet's needs during the time she remained on crutches.

### f. Pretext

To move forward from this point Adams would have to show pretext on the part of ExpressJet. She "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chems.*, 29 F.3d 1078, 1083 (6th Cir. 1994). For Adams to discredit ExpressJet's non-discriminatory reason, she must "show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [ExpressJet's decision] . . . , or (3) that they were *insufficient* to motivate [ExpressJet's decision] . . . .'" *Id.* at 1084 (quoting *McNabola v. Chicago*

---

[4](...continued)
with chemicals upon her doctor's advice to avoid chemicals following her cosmetic surgery. However, it is Ward's testimony that Lee's ability to avoid working with chemicals came from her co-workers' volunteering to cover her functions involving chemicals. According to Ward, Lee had a full medical release to return to work, and he did not change any of her job duties or make her co-workers cover her chemical work. This distinguishes Ward's situation from Adams'.

*Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993)). Yet, Adams is unable to make any of these showings.

We can easily dispense with the first and third showings. Under the first showing, Adams would have to demonstrate that ExpressJet had "light duty" work available. *See id.* Although, Adams repeatedly argues that she could have performed many ASA functions while sitting down or on crutches, she fails to demonstrate that ExpressJet had a need for an additional employee to perform these functions or that her restrictions were compatible with whatever needs ExpressJet may have had. Under the third showing, Adams would have to demonstrate that even though ExpressJet may not have had "light duty" available, it still permitted other medically restricted, injured ASAs to return to work and perform less rigorous duties. *See id.* Yet, the opposite has been shown. Several ASAs have testified that when they returned to work injured they did so without any medical restrictions and were able to perform all job functions.

It is more difficult, however, to determine whether a plaintiff has made the second showing, since this showing requires an examination of all the circumstantial evidence presented by the plaintiff. Adams would have to demonstrate that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.* However, Adams has not made this showing. In fact, the sheer weight of the evidence makes it more likely than not that ExpressJet's explanations are legitimate and that its decisions were made according to and consistent with company policies.

In addition, when Adams' medical restrictions were significantly reduced to the point where she was permitted to work without crutches, ExpressJet allowed her to come back to work and assigned her less rigorous duties under its transitional work program. It is undisputed that Adams was the first and has been the only ASA allowed to return to work without a full medical release. This further discredits Adams' contention that ExpressJet's failure to accommodate her with "light duty" was racially motivated. Adams' Title VII discrimination claim fails.

## II. Retaliation

Retaliation claims are also analyzed under the *McDonnell Douglas* model. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002); *Ky. Ctr. for the Arts v. Handley*, 827 S.W.2d 697, 701 (Ky. Ct. App. 1991). The plaintiff must establish a *prima facie* case of retaliation. Once that case is established, the burden is on the defendant to proffer a legitimate, non-discriminatory reason for its alleged retaliatory actions. To then move forward the plaintiff must provide evidence that the defendant's reason was actually a pretext to retaliate. *Brown v. Crowley*, 312 F.3d 782, 805 (6th Cir. 2002).

To establish her *prima facie* case of retaliation Adams must prove: (1) she engaged in protected activity; (2) ExpressJet knew of that protected activity; (3) ExpressJet thereafter took adverse employment action against her or subjected her to severe or pervasive retaliatory harassment; and (4) there was a causal connection between her protected activity and the adverse employment action or harassment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792-93 (6th Cir. 2000).

### a. Protected Activity

ExpressJet concedes that Adams' EEOC complaint constituted protected activity. Nonetheless, ExpressJet argues that Adams' December 4, 2003 email to Miller, in which she complains of unfair treatment, is not protected activity because it is too vague. We agree. For Adams' email to constitute protected activity for purposes of Title VII retaliation, she would have had to indicate in that email that she believed she was being treated unfairly on account of her race. *See Wehunt v. R.W. Page Corp.*, 352 F. Supp. 2d 1342 (M.D. Ga. 2004); *Revis v. Dyncorp Technical Svcs., Inc.*, 292 F. Supp. 2d 733 (D. Md. 2003).

Although in that email Adams did mention the race of other minority employees who were terminated from ExpressJet, as well as the fact that she was then the only African-American to be working for ExpressJet, she did not connect her race to her allegations of unfair treatment. In other

words, Adams did not write anything along the lines of "I feel like I'm being treated unfairly because I'm black" Thus, for purposes of her *prima facie* case, we will only consider Adams' EEOC complaint as protected activity and those instances of adverse action Adams alleges occurred after that complaint was filed on March 4, 2004.

### b. Knowledge of the Protected Activity

In his deposition Ward admits that at some point he received a letter dated March 10, 2004 from the EEOC notifying him of Adams' claim of racial discrimination against ExpressJet. Through Ward, this letter provided ExpressJet with knowledge of Adams' protected activity.

### c. Adverse Employment Action or Retaliatory Harassment

To establish this factor Adams must present clear evidence of adverse employment action or retaliatory harassment. *See Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999). She must show a "materially adverse change in the terms and conditions of [her] employment." *Id.* (quoting and adopting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993). This change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* It "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* Any harassment must sufficiently severe or pervasive to create a work environment that the reasonable person would perceive as hostile. *Akers v. Alvey*, 338 F.3d 491, 498 (6th Cir. 2003). Basically, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult . . . ." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

The allegations made and evidence submitted by Adams fail to meet these requirements. First, Adams claims that at the time a full-time baggage service office position came open in May 2004, she was the most senior ASA that was qualified to work baggage services. As such, the position should have went to her under ExpressJet policy. However, Adams contends that Ward kept

the position from being posted until Andrea Trent ("Trent"), a white ASA with more seniority than her, returned from baggage services training. Trent ultimately received the position. Adams, however, presents no proof other than her conclusory allegations. There are no facts to support her beliefs.

Second, Adams claims that she erroneously received one and one-half attendance points on March 21, 2004, resulting in the suspension of her day trading privileges. As explained by ExpressJet, a "day or shift 'trade' is a voluntary arrangement between two ASAs, where one gives another his or her scheduled day or shift." Loss of this privilege appears to merely be an inconvenience and does not constitute a materially adverse change in the conditions of Adams' employment.

Third, Adams submits that she was written-up for failing to wear a shirt under her short-sleeved jacket. Yet, as noted by ExpressJet, there is no record of any such disciplinary action. In addition, it is undisputed that Adams suffered no adverse consequences as a result of this alleged discipline.

Fourth, Adams argues that she received a poor performance notification for not completing another employee's assignment that was left for her to finish. That other employee is white, and Adams claims that employee was not disciplined. Again, this did not materially effect Adams' employment and does not rise to the level of severe or pervasive harassment.

Fifth, Adams contends that she was denied overtime opportunities she should have been awarded on April 22, May 7, May 9, and May 22, 2004.[5] However, it appears that ExpressJet awarded these shifts in accordance with well-established policy and business practices. Moreover, ExpressJet correctly notes that these overtime opportunities were something more than to which

---

[5]The term "overtime" is being used to describe any time worked in addition to an ASA's scheduled hours; it does not necessarily mean statutory overtime.

Adams was entitled. ExpressJet's failure to assign her these shifts did not materially change the terms and conditions of Adams' employment.

Sixth, Adams claims that ExpressJet retaliated against her when it failed to pay her for a holiday on her June 10, 2004 paycheck and when it deducted one hundred dollars from another paycheck around the same time. She also alleges that these paychecks "sat in the supervisor's desk" until July 8, 2004 when she finally received them. Adams, however, presents no facts in support of her arguments, while ExpressJet has submitted that Adams was one of fifteen (15) employees whose paychecks failed to include that holiday pay. Again, conclusory allegations are insufficient to establish a *prima facie* case.

Seventh, Adams argues that she was written-up for time card fraud on May 22, 2004 for an event that occurred on May 3, 2004. On May 3 Adams was still on the clock at 2:09 a.m. even though her shift had ended at 11:30 p.m. ExpressJet claims that it Adams was reprimanded for this incident based on other employees' complaints and records that indicated she had been inactive for two and one-half hours. However, ExpressJet notes that Adams did not suffer any materially adverse action, and Adams has failed to demonstrate otherwise.

Finally, Adams contends that ExpressJet denied her request to reopen a vacation bid so that she would not be required to take her four weeks of vacation before the middle of May 2004. Instead, ExpressJet waited until Adams returned from her last week of vacation (May 3 - May 9) to reopen the bid on May 12, 2004. This, however, is the only information Adams provides, and this alone is insufficient to demonstrate a materially adverse action or severe harassment.

Even taking these allegations in total, we do not believe Adams suffered a material change in the terms and conditions of her employment or that ExpressJet's actions rose to the level of creating a hostile work environment. Furthermore, Adams' remaining allegations of adverse treatment occurred between her December 4, 2003 internal complaint and March 4, 2004 EEOC

complaint. But, as we explained above, because her December 4 complaint does not constitute protected activity, we are unable to consider these allegations as evidence of adverse action.

### d. Causal Connection

Finally, even if Adams was able to establish she had suffered materially adverse actions or that ExpressJet created a hostile work environment, she is unable to demonstrate a causal connection between the alleged events of retaliation and her having filed an EEOC complaint. To establish a causal connection a plaintiff must show more than temporal proximity, particularly when the defendant provides evidence of alternative causation. *Steiner v. Henderson*, 121 Fed.Appx. 622, 628 (6th Cir. 2005). Here, Adams has done nothing more than offer temporal proximity, while ExpressJet has provided compelling evidence of alternative causation for most of Adams' allegations.

Because Adams has failed in establishing a *prima facie* case of Title VII discrimination or retaliation, summary judgment in favor of ExpressJet is appropriate. A separate order will be entered in accordance with this opinion.